IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH ROSARIO, | ) |
| | ) Civil Action No. 19 – 39 |
| Petitioner, | ) |
| | ) |
| v. | ) Magistrate Judge Lisa Pupo Lenihan |
| | ) |
| COMMONWEALTH OF PENNSYLVANIA and WASHINGTON COUNTY DISTRICT ATTORNEYS OFFICE, | ) |
| | ) |
| Respondents. | ) |

# MEMORANDUM OPINION[1]

Pending before the Court is a Petition for Writ of Habeas Corpus filed by Petitioner Keith Rosario ("Petitioner") pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). (ECF No. 9.) For the reasons set forth herein, the Petition will be dismissed as untimely.

**A. Procedural History**

On March 28, 2013, Petitioner was arrested for incidents that occurred on June 1, 2011, and charged with Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver (two counts) and Intentional Possession of a Controlled Substance by a Person Not Registered.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. See ECF Nos. 16 & 22.

1

Bail was set and posted on April 25, 2013. *See* Commonwealth v. Rosario, CP-63-CR-1262-2013.

On May 23, 2013, Petitioner was arrested and charged for an incident that occurred that same day, specifically Firearms Not to be Carried Without a License. Bail was set and posted on May 23rd. *See also* Commonwealth v. Rosario, CP-63-CR-1543-2013.

On December 11, 2014, Petitioner was arrested for incidents occurring on March 15, 2011, and charged with Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver (two counts) and Intentional Possession of a Controlled Substance by a Person Not Registered. *See* Commonwealth v. Rosario, CP-63-CR-223-2015.

The three cases against Petitioner were joined (ECF No. 29-3, pp.43-50), and on May 4, 2015, with his counsel James R. Jeffries, Jr., Esq., Petitioner, pursuant to a plea agreement, pled guilty to the firearms charge and two counts of possession with intent to deliver (one for cocaine and the other for marijuana).[2] (ECF No. 29-3, pp.13-22.) He was sentenced that same day to not less than two-and-a-half but not more than five years in prison to be followed by five years of probation. (ECF No. 29-3, pp.10-12.) He was ordered to report for his sentence on June 4, 2015.[3] Id.

On May 14, 2015, Petitioner, through Attorney Jeffries, filed a timely post-sentence Motion to Withdraw his guilty plea. (ECF No. 29-3, pp.3-9.) That motion was denied following a hearing on May 29, 2015. (ECF No. 29-2, p.86.) No direct appeal was filed until November 23, 2015, when Petitioner filed an appeal *pro se*. (ECF No. 29-2, pp.56-57.) On January 13,

---

[2] The remaining charges were *nolle prossed*.

[3] A bench warrant was issued for Petitioner's arrest after he failed to report to the Washington County Correctional Facility and he was later apprehended on June 23, 2015. (ECF No. 29-2, pp.70-85.)

2016, the Superior Court *sua sponte* quashed the appeal after finding it was filed beyond the 30-day appeal period. (ECF No. 29-2, p.46); *see also* Commonwealth v. Rosario, 1869 WDA 2015.

On November 9, 2015, Petitioner filed a timely *pro se* petition for post-conviction relief pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa. C.S. § 9541 *et seq*. (ECF No. 29-2, pp.58-68.) Petitioner's first court appointed attorney subsequently moved and was granted permission to withdraw citing a conflict of interest (ECF No. 29-2, pp.40-45) and his second court appointed attorney moved and was granted permission to withdraw upon filing a no-merit letter on August 29, 2016 (ECF No. 29-2, pp.17-21, 26-33, 34). On September 23, 2016, the court issued an order advising Petitioner of its notice of intent to dismiss the PCRA petition (ECF No. 29-2, p.15), and by order dated November 2, 2016, the court denied post-conviction relief. (ECF No. 29-1, p.77.) Petitioner did not appeal.[4]

On September 6, 2016, while the PCRA petition was pending, the court amended its May 4, 2015 sentencing order to reflect that Petitioner was Boot Camp eligible. (ECF No. 29-2, p.35.) On May 15, 2017, Petitioner was released on parole from the Pennsylvania Department of Corrections' Quehanna Boot Camp and into a half-way house. (ECF No. 29-1, pp.62-66.) On September 6, 2017, however, he was arrested and charged with, among other offenses, attempted homicide, aggravated assault, kidnapping, and conspiracy. *See* Commonwealth v. Rosario, CP-63-CR-2611-2017. In response to the new charges, the Washington County Probation and

---

[4] Petitioner did, however, attempt to appeal the court's September 23, 2016 notice of intent to dismiss the PCRA (ECF No. 29-2, p.1), but that appeal was *sua sponte* quashed by the Superior Court on December 29, 2016. Petitioner requested, and was denied, reconsideration of the quashing of his appeal on January 13, 2017, but in that order the Superior Court informed Petitioner that he could seek permission to file a notice of appeal *nunc pro tunc* in the lower court. (ECF No. 29-1, p.71); *see also* Commonwealth v. Rosario, 1652 WDA 2016.

Parole Office filed a petition seeking revocation of Petitioner's parole and probation for his three cases at Nos. 1262-2013, 1543-2013 and 223-2015.

Now back in custody, on January 9, 2018, over a year after the lower court had denied him post-conviction relief, Petitioner filed a "Permission for Leave to File Appeal of PCRA Dismissal". (ECF No. 29-1, pp.54-56.) This was also nearly a year after the Superior Court had informed Petitioner, on January 13, 2017, that he could seek permission from the lower court to file a notice of appeal *nunc pro tunc*. On January 29, 2018, the lower court denied Petitioner's request for leave to appeal noting that he had waited an entire year to file it after the Superior Court had entered its order. (ECF No. 29-1, p.52.)

On May 7, 2018, the lower court revoked Petitioner's parole and probation but deferred sentencing until the disposition of the new charges at No. 2611-2017. (ECF No. 29-1, p.39.) On February 7, 2019, he was convicted of the new charges, and, on February 21, 2019, he was resentenced for the parole and probation violations (ECF No. 29-1, p.20). He was ordered to serve the remaining term of his five year incarceration for the firearms conviction at No. 1543-2013 (with credit for time served) (ECF No. 29-1, pp.1, 19, 26-28) to be followed by a five to ten year term of incarceration at No. 1262-2013 (ECF No. 29-1, pp.1, 17, 29-32) and then a five year probation term at No. 223-2015 (ECF No. 29-1, pp.1, 18). In June 2019, Petitioner was sentenced to 30 to 90 years for his conviction at No. 2611-2017.

Petitioner initiated the instant federal habeas proceedings on January 11, 2019, the date he signed his Motion for Leave to Proceed *in forma pauperis* (ECF No. 1).[5] The Petition was docketed on April 4, 2019 (ECF No. 9) and the Respondents filed a Motion to Dismiss it as

---

[5] This is the filing date pursuant to the prison mailbox rule. See Houston v. Lack, 487 U.S. 266 (1988).

untimely on May 17, 2019 (ECF No. 23). Petitioner filed Objections (ECF No. 28) in response to the Motion to Dismiss and the Respondents filed their Answer/Response to the Petition on July 8, 2019 (ECF No. 29).

**A.**     **Petitioner's Claims**

Petitioner presents four claims for relief. First, he argues that he was coerced into pleading guilty because his attorney told him that he would move to withdraw if the case were to go to trial, and within this claim Petitioner seemingly argues that his attorney was ineffective because he did not provide him with any discovery material or discuss with him the consecutive five year probation term that he would receive as a result of his negotiated plea. Second, Petitioner argues that the trial court erred in denying his motion to withdraw his guilty plea. Third, he argues that his plea was invalid because during the plea colloquy the judge failed to comply with Pennsylvania Rule of Criminal Procedure 590. Finally, he argues that he was abandoned by his attorney, denied access to discovery material and not provided with exculpatory evidence. Within this claim he also argues that his legal mail was not delivered, although he does not specify what mail and when he discovered that it had not been delivered.

**B.**     **Statute of Limitations**

AEDPA imposes a one-year limitations period for state prisoners seeking federal habeas review. It is codified at 28 U.S.C. § 2244(d) and it provides:

(1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

   (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the

     United States is removed, if the applicant was prevented from
     filing by such State action;

  (C)  the date on which the constitutional right asserted was initially
     recognized by the Supreme Court, if that right has been newly
     recognized by the Supreme Court and made retroactively
     applicable to cases on collateral review; or

  (D)  the date on which the facts supporting the claim or claims
     presented could have been discovered through the exercise of due
     diligence.

(2)  The time during which a properly filed application for State post-
   conviction or other collateral review with respect to the pertinent judgment
   or claim is pending shall not be counted toward any period of limitation
   under this section.

28 U.S.C. § 2244(d).

  The statute of limitations set out in § 2244(d)(1) must be applied on a claim-by-claim basis. Fielder v. Varner, 379 F.3d 113 (3d Cir. 2004), *cert denied*, 543 U.S. 1067 (2005). In analyzing whether a petition for writ of habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry. First, the court must determine the "trigger date" for the one-year limitations period pursuant to section 2244(d)(1). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to section 2244(d)(2). Third, the court must determine whether any other factors apply on the facts presented that would influence the statute of limitations analysis, such as equitable tolling or an assertion of actual innocence.

Here, the "trigger date" for all of Petitioner's claims appears to be the date that his judgment of sentence became final by the expiration of time for seeking direct review.[6] In this case, Petitioner was sentenced on May 4, 2015, but he did not file a timely appeal. Therefore, his judgment of sentence became "final" thirty days later, on June 3, 2015, when the time for filing an appeal expired. *See* Gonzalez v. Thaler, 565 U.S. 134, 150 (2012); *see also* Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir.2000). Accordingly, absent any tolling, Petitioner had one year from that date, or until June 3, 2016, to file a timely federal habeas petition in this Court. Because his Petition was not filed until January 11, 2019, the Court will next consider whether any part of the one-year limitations period was tolled.

As to the second inquiry, the one-year limitations period was tolled during the pendency of Petitioner's "properly filed" state post-conviction proceedings. 28 U.S.C. § 2244(d)(2). Here, a period of 158 days elapsed between the time Petitioner's judgment of sentence became final on June 3, 2015, and the day he filed his *pro se* PCRA petition on November 9, 2015,[7] and that period of time is counted against the one-year statute of limitations. However, from November 9, 2015, until thirty days after the trial court denied post-conviction relief on November 2, 2016, there were "properly filed" post-conviction proceedings pending in state court and so the statute of limitations was tolled during that time. It then recommenced running on December 3, 2016, the day after Petitioner's time to file an appeal from the denial of

---

[6] The issues Petitioner raises here concern matters pertaining to his guilty plea and his attorney's effectiveness in representing him before and immediately after that plea. They do not involve newly enunciated constitutional rights and no impediment existed to prevent Petitioner from raising these issues in this Court sooner.

[7] The date on which the PCRA petition is filed is not counted against the statute of limitations as it is considered "pending" on that day.

PCRA relief expired. Petitioner then had 207 days remaining (365-158=207) in which to file a timely petition in this Court. However, he did not file it until 769 days later, on January 11, 2019. It is therefore untimely unless it can be saved by the application of equitable tolling or any other exception to the statute of limitations.

Apparently recognizing that his Petition is untimely, Petitioner asserts that the Court should nevertheless consider his claims because he is actually innocent for at least one of the crimes to which he pled guilty – firearms not to be carried without a license. He also alleges "government interference" but he fails to specify in what way he believes the government interfered with the timely filing of his Petition. Because of this, the Court will address only his claim of actual innocence as it relates to the untimely filing of his Petition.

In McQuiggin v. Perkins, 133 S. Ct. 1924 (2013), the United States Supreme Court reaffirmed that there is an "equitable exception" to the statute of limitations applicable to habeas claims but only when the petitioner raises "a convincing claim of actual innocence." Id. at 1935. "To qualify for this exception, the petitioner must present new, reliable evidence showing it is more likely than not that no reasonable juror would have voted to convict him." Reeves v. Fayette SCI, 897 F.3d 154, 157 (3d Cir. 2018) (citing Schlup v. Delo, 513 U.S. 298, 324, 329 (1995)). Indeed, the Supreme Court has cautioned that "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" McQuiggin, 133 S. Ct. at 1936 (quoting Schlup, 513 U.S. at 316). "In this context, actual innocence refers to factual innocence, not legal insufficiency." Reeves, 897 F.3d at 160.

The evidence that Petitioner claims supports a finding of his innocence is neither new nor is it such that no reasonable juror would have voted to convict him had he gone to trial. Specifically, Petitioner argues that he is actually innocent of the firearms conviction because, Rashia Day (a minor at the time), took ownership responsibility for the firearm in question. However, this evidence is far from "new" because it was first brought to the attention of the trial court by Petitioner's attorney on May 11, 2015.[8] In fact, this was the sole reason Petitioner sought to withdraw his guilty plea and it was addressed in a hearing before Judge DiSalle on May 29, 2015. *See* ECF No. 29-3, pp.7-9; No. 37. At that hearing, it was noted that Day had come to the courthouse on May 11th and confessed to owning the gun that was the subject of Petitioner's conviction and hiding it in the car in which it was found.[9] (ECF No. 37, pp.2-3, 17.) Petitioner, maintaining his innocence for the firearms charge and testifying that he did not know the gun was in the vehicle and was surprised when police found it, testified that he wanted to withdraw his plea because Day's confession proved his innocence. (ECF No. 37, pp. 4, 6-7, 9.) The judge, however, noted that Petitioner had given a recorded statement to police admitting to having fired the gun (that apparently Day hid under the seat) and no motion was ever filed

---

[8] This information was first brought to light in a hearing involving Petitioner's co-defendant, Zaie Escribano. *See* ECF No. 29-4.

[9] The firearms charge arose from an incident on May 23, 2013, where Petitioner and his co-defendant (Zaie Escribano) were found in a vehicle within which was a revolver under the front passenger seat. The police report indicates that Washington County Police initially responded to the area of Freestyle Bar in Washington, Pennsylvania for shots fired, and a silver Pontiac Bonneville was seen fleeing the scene. When stopped, Petitioner was found in the front passenger seat and his co-defendant was in the rear passenger seat. The firearm, a RG Industries Model RG39 .38 special revolver that was black in color and loaded with 5 CCI .38 SPL rounds that were silver in color, was located under the front passenger seat. Although the record does not contain Day's exact statement, it appears that she confessed to hiding the gun, which she claimed belonged to her, in the car and it is unclear what, if anything, happened to her as a result of this because she was appointed an attorney and advised not to say anything further.

seeking suppression of that statement. (ECF No. 37, pp. 12-13.) He also noted that Day's statement was not admissible in court unless she changed her mind and that her purported ownership of the gun and what she did with it was not a defense to the crime for which Petitioner was charged. (ECF No. 37, pp17-18.)

While Petitioner argues that he is innocent because the firearm in question did not belong to him, the Commonwealth was under no duty to prove ownership of the firearm because the offense for which Petitioner was charged does not require evidence of ownership to support a conviction.[10] *See, e.g.*, Commonwealth v. Bressi, 2017 WL 4179727, at *3 (Pa. Super. Sept. 21, 2017). The evidence at the time Petitioner pled guilty was that (1) the gun was found in the car under Petitioner's seat, (2) the car had just been seen fleeing the scene where shots had been fired, and (3) Petitioner gave a recorded statement to police admitting that he was the one who fired the gun at the scene where shots had been fired. This evidence was more than sufficient to show that Petitioner constructively possessed the firearm in question.[11] Therefore, even assuming Petitioner had gone to trial and that Day's statement had been ruled admissible, her

---

[10] Specifically, Petitioner was charged with and pled guilty to violating 18 Pa. C.S.A. § 6106(a)(1), which prohibits any person from "carr[ying] a firearm in any vehicle . . . without a valid and lawfully issued license under this chapter[.]"

[11]
> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

Commonwealth v. Hopkins, 67 A.3d 817, 820 (Pa. Super. 2013) (citation omitted).

statement alone would not have proved his innocence or lead a reasonable juror to have a reasonable doubt as to his guilt for the crime of Firearms Not to be Carried without a License. Thus, Petitioner has failed to present evidence showing that he is actually innocent, and, as such, his Petition will be dismissed as time-barred.

**C.**     **Certificate of Appealability**

A court should issue a certificate of appealability where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). A certificate of appealability will be denied in this case because jurists of reason would not disagree with the Court's finding that the Petition is time-barred. Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack, 529 U.S. at 484). A separate Order will issue.

Dated: February 10, 2020.

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH ROSARIO, | ) |
| Petitioner, | ) Civil Action No. 19 – 39 |
| v. | ) Magistrate Judge Lisa Pupo Lenihan |
| COMMONWEALTH OF PENNSYLVANIA and WASHINGTON COUNTY DISTRICT ATTORNEYS OFFICE, | ) |
| Respondents. | ) |

## ORDER

**AND NOW**, this 10th day of February 2020;

**IT IS HEREBY ORDERED** that the Motion to Dismiss the Petition for Writ of Habeas Corpus (ECF No. 23) is **GRANTED** and the Petition is hereby dismissed as untimely.

**IT IS FURTHER ORDERED** that the Motion for Production of Documents, Records and Other Tangible Evidence (ECF No. 35) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment in favor of Respondents and mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge

Cc: Keith Rosario
MB4878
SCI Albion
10745 Route 18
Albion, PA  16475

Counsel of record
(Via CM/ECF electronic mail)